IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

STEVEN S. SCOTT                                                                                    PLAINTIFF

         v.                              Civil No. 06-5202

RANDALL DENZER, Jail
Administrator, Washington
County Detention Center;
DETECTIVE BRADLEY RENFRO,
Fayetteville City Police Department;
and JASON FRENCH, Fayetteville
City Police Department                                                                          DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

The plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983.  He proceeds *pro se* and *in forma pauperis*.

Separate defendants Bradley Renfro and Jason French filed a motion for summary judgment (Doc. 14).  Separate defendant Randall Denzer also filed a motion for summary judgment (Doc. 17). To assist plaintiff in responding to the motions, a questionnaire was propounded (Doc. 21). Plaintiff filed a timely response to the questionnaire (Doc. 22).  The summary judgment motions are before the undersigned for issuance of this report and recommendation.

### Background

Scott was arrested by the Fayetteville Police Department on April 7, 2004, at 22:30 or 10:30 p.m. and charged with arson and violation of an order of protection. *Plaintiff's Response*

-1-

(Doc. 22) (hereinafter *Resp.*) at ¶ 1. He was booked into the City Jail at 23:24 or 11:34 p.m. *Id.* at ¶ 2. He remained incarcerated at the City Jail until April 9th at 19:03 or 7:03 p.m. *Id.*

Bradley Renfro is currently an employee of the Fayetteville Police Department and was at the time of the incidents at issue the complaint. *Resp.* at ¶ 4. Justin French is currently an employee of the Fayetteville Police Department and was at the time of the incidents at issue in the complaint. *Id.* at ¶ 5. Rob Tuberville is an administrative lieutenant in the Fayetteville Police Department and is an official keeper of all documentation and paperwork for the department. *Id.* at ¶ 6.

Scott was booked into the Washington County Detention Center (WCDC) on April 9, 2004, at 22:25 or 10:25 p.m. *Resp.* at ¶ 7. According to Scott's intake sheet at the WCDC, the bond on his arson charge was $250,000 and he had a court date of May 12, 2004, at 7:45 a.m. *Id.* at ¶ 8.

On April 9th, as part of Scott's intake, he completed a medical questionnaire, an inmate medical insurance information form, and a medical release and informed consent for treatment form. *Resp.* at ¶ 9. On April 9th, Officer Willis completed an inmate intake sheet that listed Scott's personal property and the charges against him and he signed the form. *Id.* at ¶ 10.

According to the inmate charge detail, probable cause was found to exist on April 10th by Judge Reynolds and bond set at $250,000 and Scott was given a court date of May 12th. *Resp.* at ¶ 11. On April 24th Scott signed the order for conditions of release form from the Washington County Circuit Court. *Id.* at ¶ 12. The conditions included his appearance in court on May 12, 2004, at 7:45 a.m. *Id.* The conditions included waiver of extradition, no violation

-2-

of any laws, no contact with the victims, and bail of $250,000. *Id.* The conditions for release form was also signed by Judge Reynolds. *Id.* Scott was released on April 24th at 19:50 or 7:50 p.m. after securing a bond from Holt Bonding. *Id.* at ¶ 13.

When Scott was released on April 24th, he was given arraignment information informing him that he must appear on May 12th at 7:45 a.m. before Judge Reynolds. *Resp.* at ¶ 14. He signed the arraignment information sheet acknowledging he had been given directions to the court and understood the necessity for his appearance. *Id.* On April 26th Bondsman Stuart Huhgin completed bond 24-12472 for Scott in the amount of $250,000 and noted his May 12th appearance date and time. *Id.* at ¶ 15.

On May 11th a felony information accusing Scott of accomplice to arson and violation of a protective order was filed. *Resp.* at ¶ 16. A post arrest warrant was served on Scott by Officer Larry Johnson on May 12th for accomplice to arson and violation of a protective order. *Id.* at ¶ 17.

On May 25, 2004, Scott was arrested by the Fayetteville Police Department at 1:15 and charged with domestic battery (third degree). *Resp.* at ¶ 19. He was released that same day a little more than two hours later at 3:38. *Id.* at ¶ 20.

On May 25th prosecuting attorney John Threet filed a motion to revoke Scott's surety bond because of his arrest by the Fayetteville Police Department. *Resp.* at ¶ 21. French provided an affidavit in support of the motion to revoke the bond. *Id.* at ¶ 22. On May 24th he stated the police responded to 2355 S. Razorback in response to a disturbance call involving a gun. *Id.* The police were told that Scott and his brother John fought over a handgun and the gun

discharged inside the home. *Id.* There were five juveniles present. *Id.* Scott was arrested on charges of endangering the welfare of a minor and domestic battery. *Id.*

On May 25th Judge William Story signed an order revoking Scott's surety bond and ordering him to be turned into the Washington County Sheriff's Office immediately. *Resp.* at ¶ 23. A warrant information sheet dated May 26th stated there was an active warrant issued for Scott's arrest due to a violation of the conditions of his bond. *Id.* at ¶ 24.

On June 3, 2004, Scott was arrested by the Fayetteville Police Department for terroristic threatening and violation of a protection order. *Resp.* at ¶ 25. He was booked in at 18:22 or 6:22 p.m. *Id.* He was released to "WASS" on June 4th at 19:12 or 7:12 p.m. *Renfro's Ex.* 5 at page 4.

Scott was booked into the WCDC at 8:34 p.m. on June 4th on charges of violation of the conditions of his bond, terroristic threatening, and violation of Act 266. *Resp.* at ¶ 27. As part of his intake, he completed a medical questionnaire indicating he had no health problems. *Id.* at ¶ 28. On June 4th Scott signed an intake sheet which listed his personal belongings and indicated the reason for his detention was "look at preliminary report." *Id.* at ¶ 29.

The preliminary report was prepared by French. *Resp.* at ¶ 30. It stated he received a phone call from Jamie Scott, the victim in the case, on May 26th. *Id.* Jamie Scott reported having received a phone call from Scott on May 25th in which he stated he was going to cut her neck. *Id.* French listened to the message. *Id.*

An alias warrant was served on Scott on June 4th for violation of conditions of his bond on an underlying charge of accomplice to arson. *Resp.* at ¶ 31. On June 5th, Judge Gunn found

probable cause to believe Scott violated the conditions of his bond. *Id.* at ¶ 32. She ordered Scott held without bond and set a court date of July 7, 2004. *Id.*

On June 14th, July 26th, August 8th, August 23rd, September 19th, September 29th, and November 7th, Scott requested a medical shave. *Resp.* at ¶ 33. On July 5th Scott submitted a request asking what his charges were and what his court dates were. *Id.* at ¶ 34. In response, he was told violation of the conditions of his bond (court date 7/7/04), terroristic threatening, and violation of Act 266 of the 1991 protection act. *Id.*

On July 6, 2004, a felony information was filed charging Scott with terroristic threatening and violation of a protective order. *Resp.* at ¶ 36. On July 7th Scott was transported to the Washington County Circuit Court by Officer Johnson and was arraigned by Judge Reynolds. *Id.* at ¶ 36. He was appointed a public defender B. Showalter. *Id.* He pled not guilty and a trial date of August 30th was set. *Id.*

A post arrest warrant was served on Scott on July 7th on the charges of terroristic threatening and violation of a protective order. *Resp.* at ¶ 37. Scott was transported on July 14th to the Washington County Circuit Court and appeared before Judge Story. *Id.* at ¶ 38. His case was rescheduled to September 8th. *Id.*

On July 16th Scott asked for legal envelopes for Judge Gunn and Judge Storey. *Resp.* at ¶ 40. On August 30th the records of the WCDC show Scott was transported to the Washington County Circuit Court to appear before Judge Storey. *Denzer's Ex.* 1 at page 36. Scott states he did not go to the hearing. *Resp.* at ¶ 41. However, he states bond was set at $35,000. *Id.* at ¶ 42.

-5-

On September 16th Scott asked for a legal envelope for Cristi Beaumont with the public defender's office. *Resp.* at ¶ 43. On September 19th Scott asked for his court dates. *Id.* at ¶ 44. In response he was told November 16th. *Id.*

Scott was transported to the Washington County Circuit Court on November 16th and appeared before Judge Storey. *Resp.* at ¶ 49. He was represented by Cristi Beaumont and Tim Snively and entered a negotiated plea of guilty to the accomplice to arson charge and the terroristic threatening charge. *Id.* at ¶ 50. He was sentenced to 300 months in the Arkansas Department of Correction (ADC) with 180 months suspended and was given credit for 181 days spent in jail. *Denzer's Ex.* 1 at pages 39-41. He was also to pay restitution and to have no contact with the victim. *Id.*

On November 19th Scott was made a trusty and assigned to the morning kitchen staff. *Resp.* at ¶ 52. On December 5th Scott requested a copy of your commitment papers. *Id.* at ¶ 53. In response, he was provided a copy. *Id.* He was released to the ADC on December 16th. *Id.* at ¶ 54.

The employees of the Fayetteville Police Department have no authority in, or control of, the WCDC. *Renfro's Ex.* 3 at ¶ 5. The WCDC is totally controlled and operated by Washington County. *Id.* The Fayetteville Police Department and the WCDC are separate and distinct entities or agencies. *Id.* at ¶ 6. Any relationship between the Fayetteville Police Department and the WCDC is purely a working relationship. *Id.* at ¶ 7. The Fayetteville Police Department turns over arrested individuals to the WCDC to be incarcerated. *Id.*

AO72A
(Rev. 8/82)

Employees of the WCDC determine when to take the arrested person before a judge or magistrate. *Resp.* at ¶ 60; *Renfro's Ex.* 3 at ¶ 7. Tuberville is not an employee of the WCDC and has never been employed there. *Resp.* at ¶ 62. Every arrest or booking of Scott was made pursuant to a valid warrant or based on probable cause. *Id.* at ¶ 63. Scott was held for a valid reason or purpose by the Fayetteville Police Department. *Id.* at ¶ 64.

Scott was asked whether he contended a custom or policy of Washington County resulted in his not having been brought before a judge without unnecessary delay for his first appearance following his arrest. He responded:

> WCDC dose not seem to have a first appearance policy because all inmates at WCDC never appear before a Judge with in 72 hours. Dose WCDC have a first appearance policy? Under the law, every person arrested with or without a warrant who is not released by citation or other lawful manner is entitled to physically appear before a Judge within 72 hours under Rule 8.1. From April 7, 2004–April 24, 2004 is 17 days. Yes more than 72 hours. Rule 8.1 is designed to protect "basic and fundamental rights which our state and federal constitutions secure to every arrestee Bloden, 561 S.W. 2d at 284

*Resp.* at ¶ 67.

Scott never personally saw or spoke to Denzer during his incarceration. *Resp.* at ¶ 68(A). However, he believes Denzer is liable for the violation of his constitutional rights because Rule 8.1 requires a jailer to ensure that pretrial detainees appear before a judge without unnecessary delay. *Id.* Scott asserts that as jail administrator Denzer was responsible for ensuring that Rule 8.1 was complied with and he was not deprived of his substantive due process rights. *Id.* at ¶ 68(A) & ¶ 68(B).

## Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## Discussion

As noted above, there are two motions for summary judgment pending. We will address the motions separately.

### *The Motion of Renfro and French*

Renfro and French contend they are entitled to summary judgment in their favor because each arrest they made of Scott was supported by probable cause. Further, they point out Scott was only in the custody of the Fayetteville Police Department for short periods of time and then

turned over to the WCDC to be incarcerated. They contend any duty to bring Scott before a judge for a Rule 8.1 first appearance was on officials at the WCDC.

Scott concedes each arrest or booking of him by the Fayetteville Police Department was made pursuant to a valid warrant or based on probable cause. *Resp.* at ¶ 63. He concedes he was held for a valid reason or purpose by the Fayetteville Police Department. *Id.* at ¶ 64. He also agrees that the employees of the WCDC determine when individuals in its custody are taken before a judge or magistrate. *Id.* at ¶ 60. We therefore find the motion for summary judgment filed by Renfro and French should be granted.

### *The Motion for Summary Judgment Filed by Randall Denzer*

Defendants move for summary judgment contending: (1) the complaint must be construed as asserting an official capacity claim only and plaintiff has failed to offer any evidence in support of an unconstitutional county policy; (2) alternatively, if the complaint is construed to be asserting an individual capacity claim against Denzer, the plaintiff has failed to offer any evidence that Denzer had any personal involvement; (3) plaintiff cannot prove any of his claimed damages were caused by an untimely Rule 8.1 hearing; and (4) plaintiff should be judicially estopped from recovering damages for days spent in jail since he received jail credit for those days toward his sentence.

The Due Process Clause of the Fourteenth Amendment controls the issue of a pretrial detainee's right to a prompt appearance in court after an arrest by warrant. *See Hayes v. Faulkner County*, 388 F.3d 669, 673 (8th Cir. 2004). In *Hayes*, the court noted first that the "Due Process Clause forbids an extended detention, without a first appearance, following arrest by warrant." *Id.* Second, the court considered "whether the defendants' conduct offends the

standards of substantive due process." *Id.* at 674. In doing so, it noted that "[d]eliberate indifference to prisoner welfare may sufficiently shock the conscience to amount to a substantive due process violation." *Id.*

In the *Hayes* case, the plaintiff argued the County policy was to submit names of confinees to the court and then wait for the court to schedule a hearing. The Eighth Circuit noted the court in *Oviatt v. Pearce*, 954 F.2d 1470, 1478 (9th Cir. 1992), had found a policy was deliberately indifferent where the jail had no internal procedures to track whether inmates had been arraigned. Further, the Eighth Circuit noted the court in *Armstrong v. Squadrito*, 152 F.3d 564, 578-579 (7th Cir. 1998) had stated that "[a] policy that ignores whether the jail has the authority for long-term confinement seems to be a policy of deliberate indifference." In the case before it, the Eighth Circuit held that "[b]ecause the County's policy . . . attempts to delegate the responsibility of bringing detainees to court for a first appearance and ignores the jail's authority for long-term confinement, the policy is deliberately indifferent to detainees' due process rights." *Hayes*, 388 F.3d at 674.

The "third and final step in this substantive due process analysis is determining whether, in the totality of the circumstances, the defendants conduct in depriving the [plaintiff] of a constitutional right shocks the conscience. This is a question of law." *Hayes*, 388 F.3d at 675 (citations omitted).

In this regard, the court stated:

In the totality of circumstances in this case, the key is Arkansas Rule of Criminal Procedure 8.1, entitled "Prompt first appearance." The Rule requires: "An arrested person who is not released by citation or by other lawful manner shall be taken before a judicial officer without unnecessary delay." Ark. R. Crim. P. 8.1. Rule 8.1 is mandatory. *Bolden v. State,* 262 Ark. 718, 561 S.W.2d 281, 284

-10-

> (1978). Detentions of less than 38 days violate Rule 8.1. *Duncan v. State,* 291 Ark. 521, 726 S.W.2d 653, 656 (1987)(3 ½ days); *Cook v. State,* 274 Ark. 244, 623 S.W.2d 820, 821 (1981) (31 days); *cf. Richardson v. State,* 283 Ark. 82, 671 S.W.2d 164 (1984) (56 days).   Rule 8.1 is designed to protect "basic and fundamental rights which our state and *federal constitutions* secure to every arrestee." *Bolden,* 561 S.W.2d at 284 (emphasis added).

*Hayes*, 388 F.3d at 675. The court concluded that "[t]he County's and Kelley's failure to take Hayes before a judge for 38 days shocks the conscience."

Denzer concedes in this case that Scott's first appearance following his April 7th arrest was on May 12th, although he bonded out on April 24th, and his first appearance following his June 4th arrest was on July 7th. *Defendant's Brief* (Doc. 18) at page 1. However, they contend Scott has failed to establish a sufficient showing of a County policy that was the moving force behind the alleged violation. We believe there are genuine issues of fact as to whether a County policy was the moving force behind the violation of Scott's substantive due process rights. Scott maintains his confinement was the result of Denzer failing to put in place procedures, rules or regulations to ensure that detainees were taken for their first appearances.

"A policy is deliberately indifferent to a person's constitutional rights when its inadequacy is both obvious and likely to result in the alleged deprivation of constitutional rights." *Russell v. Hennepin County*, 420 F.3d 841, 847 (8th Cir. 2005). Furthermore, when a situation calls for there to be in place procedures for dealing with a particular situation, here the first appearance of detainees, the failure to make a policy can be actionable so long as the failure is being attributed to the individual who has policy making authority. *See e.g., City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985). We believe this is the type of situation Scott has alleged exists at the WCDC.

-11-

Denzer next argues that Scott cannot prove his claimed damages are the result of his delayed Rule 8.1 hearing. In his complaint, Scott asked for monetary damages in the amount of $2,500,000 for each constitutional violation. When asked to explain how he was harmed by not having a first appearance without unnecessary delay, Scott responded:

> I was unable to work. Help my family. Get a bond reduction. Unable to talk to a lawyer about my case or even help pay for a lawyer. It set me back so far that I lose my home, cars, job, and 25,000.00 on bond. I do believe that my being denied due process 8.1 caused problem with my family and put me in deep depression I did not care anymore what they did to me.

*Resp.* at ¶ 73.

We find it unnecessary to examine the principles of judicial estoppel. The Prison Litigation Reform Act (PLRA) contains a limitation on recovery. Specifically, it provides that "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). In *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004), the court held that § 1997e(e) limited "recovery for mental or emotional injury in all federal actions brought by prisoners."

Scott suffered no physical injury as a result of not receiving a Rule 8.1 hearing. In the absence of a physical injury, Scott cannot recover compensatory damages for mental or emotional injury suffered during any period of wrongful detention prior to his first appearance. This, however, does not preclude Scott from recovering an award of nominal damages. *Royal*, 375 F.3d at 723. Additionally, an award of punitive damages against Denzer in his official capacity is precluded as such a claim is the equivalent of a claim against Washington County

AO72A
(Rev. 8/82)

itself. *See e.g., Brandon v. Holt*, 469 U.S. 464, 471-72 105 S. Ct. 873, 83 L. Ed. 2d 878 (1985). The County cannot be held liable for punitive damages. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 260, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981).

## Conclusion

For the reasons stated, I recommend that the motion for summary judgment filed on behalf of Bradley Renfro and Jason French (Doc. 14) be granted. I further recommend that the motion for summary judgment filed on behalf of Randall Denzer (Doc. 17) be granted in part and denied in part. Specifically, I recommend the motion be granted with respect to plaintiff's request for an award of actual damages for mental and emotional injury and punitive damages. Plaintiff's requests for actual and punitive damages should be dismissed.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 11th day of February 2008.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)