IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

STEVEN S. SCOTT PLAINTIFF

v. Civil No. 06-5202

RANDALL DENZER, Jail Administrator, Washington County Detention Center DEFENDANT

**MEMORANDUM OPINION**

The plaintiff, Steven S. Scott (hereinafter Scott), filed this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*.

Scott maintains his constitutional rights were violated by the length of time between his arrest and his first appearance before a judge. Pursuant to the consent of the parties (Doc. 30), a bench trial was held on July 15, 2008. At the conclusion of the trial, the matter was taken under advisement pending preparation of this memorandum opinion.

**Background & Evidence Presented**

The defendant stipulated that following Scott's arrest on April 7, 2004, he did not appear in person before a judge until May 12, 2004. Although he did bond out of the Washington County Detention Center on April 24th. The defendant also stipulated that his first appearance following his June 4th arrest was on July 7th.

At trial, the court heard the testimony of the following witnesses: (1) Cristi Beaumont; and (2) Major Randall Denzer.



AO72A
(Rev. 8/82)

The testimony of the witnesses will be summarized in the first person. The testimony will not necessarily be summarized in the order presented.

***Cristi Beaumont***

I'm an attorney at the Washington County Public Defender's Office. I've been employed there five years. I represented Scott in 2004.

Presently in Washington County detainees have a first appearance within forty-eight hours of arrest. In 2004, detainees were given their first appearance at arraignment which typically occurred thirty days after arrest.

The policy changed when a case came down that advised everyone that they needed to start having Rule 8.1 hearings. After the case came down, the change went into effect pretty fast.

Before the case came down, I didn't hear anyone complaining the first appearance needed to be separate from the probable cause hearing. I may have heard it from the public defender's office but I'm not positive.

Presently, initial appearances are typically handled within forty-eight hours before Judge Reynolds. The detainees are informed of their right to an attorney and told they can be appointed an attorney if they can't afford one. However, an attorney is still not appointed until arraignment.

Arraignments are done on Mondays, Wednesdays, and Fridays. At arraignments, the public defender's office has people present screening individuals to determine if they qualify for appointed counsel. The defendant has to complete an affidavit saying they are indigent and can't afford counsel.

I'm not sure what dictates the time between the initial appearance and arraignment. I believe the prosecutor's office requests a certain amount of time to give them time to get police reports, etc., together. It is quite possible the judge sets the arraignment date.

The change in how initial appearances were handled occurred in 2004. I was employed in the prosecutor's office in 2001 and 2002. I worked there for about one and one-half years. Then there was a six month span between working at the prosecutor's office and when I went to the public defender's office.

The police officers would send over a preliminary report to the prosecutor's office. A prosecutor would then walk it upstairs to the judge's office. The judge would determine probable cause and set bond. The document marked Plaintiff's Exhibit 2 is the type of preliminary report form that would be used. I represented Scott on the terroristic threatening charges though. He was already represented on the arson charges.

The document marked Plaintiff's Exhibit 5 is the preliminary report for the incident I represented Scott on. I proceeded to discovery.

The preliminary reports are submitted the night of the arrest. Once submitted to the prosecuting attorney's office, the reports are taken to the circuit judge for a probable cause determination. The judge makes the probable cause determination and sets bond but the detainee does not appear. Before the arraignment date, which is typically thirty days after the arrest, a determination is made whether to file an information or indictment. Sometimes cases are referred back to district court if they don't make the felony level. The prosecuting attorney's office tries to make the determination within the thirty days.



AO72A
(Rev. 8/82)

Court's Exhibit 1 is a general case docket display for case number 04-1406 the terroristic threatening case against Scott. It is a typical print out. It shows the information was filed July 6th. The preliminary report shows he was arrested on June 3rd. It would be typical that the information would not be filed until July 6th and the arraignment proceeding would be on July 7th. My office would be appointed on July 7th. This would be the first time Scott would have appeared in court.

Court's Exhibit 2 is the general docket display for case number 04-972 the arson case against Scott. I didn't represent him on that case.

In November of 2004, he entered into a plea agreement and was sentenced to 300 months imprisonment. *Court's Exhibit* 4. I represented him at that proceeding.

***Major Randall Denzer***

I'm the jail administrator of the Washington County Detention Center (WCDC). I occupied that position in 2004.

In 2004, we did the probable cause determination, had the bond set and got the arraignment date within forty-eight hours. We were not aware of Rule 8.1. The judges told us who to bring and when to bring them.

We provided detainees with a rule book. As part of intake, they were asked if they had read and understood the rule book.

The policy is different today. County policy is set by the sheriff and the courts. Today the county sheriff is Sheriff Helder. In 2004, it was Sheriff Whitmill. In 2004, the judges thought the probable cause determination was fine for Rule 8.1.

When our attorneys notified us about the *Hayes* [*v. Faulkner County*, 388 F.3d 669 (8th Cir. 2004) decided on October 29, 2004] case, and asked if we were complying with it, we went to see the circuit judges and the prosecuting attorney to see if we could fix things. They were hesitant at first. But we started working on a new policy the last part of 2004. By the first of 2005, the new policy was in place.

Now, when a person is arrested, the judge does an *ex parte* hearing to determine probable cause and set bond. The judges have been doing that since the 1990's. When a person is arrested, the paperwork is faxed to the judge and the prosecutor's office. The paperwork comes back the next day. This step is separate from the Rule 8.1 hearing.

Prior to receiving notification from the attorneys about the *Hayes* case, no one ever told me that a separate first appearance hearing was necessary. When Scott was arrested on April 7, 2004, he didn't appear before a judge until May 12th. He did bond out on April 24th. When he was arrested on June 4th, he didn't appear before a judge until July 7th. On both arrests, Scott had an *ex parte* probable cause hearing within forty-eight hours and it was determined whether he was entitled to bond.

In my experience since separate first appearance hearings have been started, a judge has never changed the bond that was initially set. We have the hearings on Mondays, Wednesdays, and Fridays.

In Scott's case, following his April 7th arrest, probable cause was determined on April 10th by Judge Reynolds. *Court's Exhibit* 3. Scott was arrested on April 7th and held in the City Jail before he was transferred to the WCDC. The arresting officer is the one that fills out the



AO72A
(Rev. 8/82)

preliminary report. When Scott is brought in, the preliminary report is faxed to the judge and prosecutor's office. The judge's office calls back to the jail and the information is entered into the computer. *Id.*

Court's Exhibit 4 provides the same information for the June 4th intake date. Probable cause was found to exist by Judge Gunn on June 5th and no bond set. *Court's Exhibit* 4. At this point in time, I was unaware of Rule 8.1 and this was just the way business was done in Washington County.

**Discussion**

The Due Process Clause of the Fourteenth Amendment controls the issue of a pretrial detainee's right to a prompt appearance in court after an arrest. *See Hayes v. Faulkner County*, 388 F.3d 669, 673 (8th Cir. 2004). In *Hayes v. Faulkner County*, 388 F.3d 669, 673 (8th Cir. 2004), the Court of Appeals for the Eighth Circuit applied the framework set forth by the Seventh Circuit in *Armstrong v. Squadrito*, 152 F.3d 564 (7th Cir. 1998), in determining whether an extended detention following an arrest violated the Due Process Clause.

Applying this framework, the *Hayes* court considered the following three questions: (1) does the Due Process Clause prohibit an extended detention, without an initial appearance, following arrest by a valid warrant; (2) does the Defendant's conduct offend the standards of substantive due process; and (3) do the totality of the circumstances shock the conscience. *Hayes*, 388 F.3d at 673. *See also Luckes v. County of Hennepin*, 415 F.3d 936 (8th Cir. 2005).

Addressing the first question, the Eighth Circuit noted that "[a]lmost every element of a 'first appearance under state statutes or the Federal Rules of Criminal Procedure serves to



AO72A
(Rev. 8/82)

enforce or give meaning to important individual rights that are either expressly granted in the Constitution or are set forth in Supreme Court precedent." *Hayes*, 388 F.3d at 673 (internal quotation marks and citations omitted). The Court stated that an extended detention impinged upon and threatened those rights. *Id.* The Eighth Circuit concluded that the "Due Process Clause forbids an extended detention, without a first appearance, following arrest by warrant." *Id.*

The question then becomes whether under the facts of this case Scott was subjected to an extended detention without a first appearance. At issue in this case are two separate arrests, the first arrest occurred on April 7th with his first appearance on May 12th the second arrest occurred on June 4th with his first appearance on July 7th.

It is undisputed that at the time of his arrests, the policy in Washington County was that detainees were initially only provided with an *ex parte* determination of probable cause and a determination of whether bond would be set. Detainees did not appear before a judge until approximately thirty days after their arrest at their arraignment. This was true in Scott's case. Following the first arrest, probable cause was determined and bond set. Following his second arrest, probable cause was determined and bond was denied. Scott was not informed of the charges against him, informed of his right to counsel, or appointed counsel until his arraignment.

With respect to first appearances, Rule 8.1 of the Arkansas Rules of Criminal Procedure provides that "[a]n arrested person who is not released by citation or by other lawful manner **shall** be taken **before a judicial officer without unnecessary delay**." (emphasis added). With respect to the nature of the first appearance, Rule 8.3 of the Arkansas Rules of Criminal



AO72A
(Rev. 8/82)

Procedure provides in relevant part that the judicial officer shall inform the arrested person of the charges against him, that he is not required to say anything and that anything he says can be used against him, that he has the right to counsel, and that he has a right to communicate with his counsel, his family, or his friends, and that reasonable means will be provided for him to do so. Ark. R. Crim. P. 8.3 After the arrested person has an opportunity to confer with counsel, the judicial officer may proceed with the pretrial release inquiry. *Id.*

The probable cause determinations made as a result of preliminary report being faxed to the Prosecuting Attorney's Office and the Circuit Judge's Office appear to satisfy the Fourth Amendment requirements for a prompt judicial determination of probable cause following a warrantless arrest. *See Gerstein v. Pugh*, 420 U.S. 103, 126, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975). The probable cause determination may be made without a personal appearance by the arrestee. *See e.g., Jones v. City of Santa Monica*, 382 F.3d 1052, 1055-56 (9th Cir. 2004). The probable cause determination serves to judicially approve an arrest without a warrant and in essence places the arrest on the same footing (*i.e., based on probable cause*) as an arrest made pursuant to a warrant. *See Tilson v. Forrest City Police Dept.*, 28 F.3d 802, 815 n.10 (8th Cir. 1994).

However, the actions taken did not afford Scott the adversary safeguards, such as the right to be present at the hearing, the right to hear the charges against him, the right to the appointment of counsel, etc., afforded at the first appearance. *See e.g., Garcia v. Chicago*, 24 F.3d 966, 973-974 n.2 (7th Cir. 1994)("While this process comports with the requirements of *Gerstein*, it is far from clear that it is the equivalent of the hearing we have required as a

prerequisite to extended pre-trial detention in *Coleman* or *Patton*."). *See also Afeworki v. Thompson*, No. CO6-628MJP, 2007 WL 2572293 (W.D. Wash. Sept. 5, 2007)(noting probable cause determination is not the equivalent of a first appearance). I conclude Scott was subjected to an extended detention, following both the April 7th arrest and the June 4th arrest without a first appearance.

Second the Court must consider "whether the [Defendant's] conduct offends the standards of substantive due process." In this regard, the *Hayes* court noted that:

> [d]eliberate indifference to prisoner welfare may sufficiently shock the conscience to amount to a substantive due process violation. [L]iability for deliberate indifference to inmate welfare rests upon the luxury enjoyed by prison officials of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations.

*Hayes*, 388 F.3d at 674.

In this case Scott has sued Major Denzer. A suit against Major Denzer in his official capacity is the equivalent of a suit against Washington County. *See e.g., Roberts v. Dillon*, 15 F.3d 113, 115 (8th Cir. 1994)("An official-capacity suit is merely another way of pleading an action directly against the public entity itself. . . . When Roberts sued Sheriff Gravett in his official capacity she sued the County." (citations omitted)). "In order to make out a case of municipal liability against the County, [a Plaintiff] must show that his constitutional injury was caused by a policy or custom of the municipality, the implementation of which amounted to deliberate indifference to his constitutional rights." *Lund v. Hennepin County*, 427 F.3d 1123, 1125 (8th Cir. 2005)(citations omitted). "A policy is deliberately indifferent to a person's constitutional rights when its inadequacy is both obvious and likely to result in the alleged



AO72A
(Rev. 8/82)

deprivation of constitutional rights." *Russell v. Hennepin County*, 420 F.3d 841, 847 (8th Cir. 2005).

In the *Hayes* case, the Plaintiff argued the County policy was to submit names of confinees to the court and then wait for the court to schedule a hearing. The Eighth Circuit noted the Court in *Oviatt v. Pearce*, 954 F.2d 1470, 1478 (9th Cir. 1992), had found a policy was deliberately indifferent where the jail had no internal procedures to track whether inmates had been arraigned. Further, the Eighth Circuit noted the Court in *Armstrong v. Squadrito*, 152 F.3d 564, 578-579 (7th Cir. 1998) had stated that "[a] policy that ignores whether the jail has the authority for long-term confinement seems to be a policy of deliberate indifference." In the case before it, the Eighth Circuit held that "[b]ecause the County's policy . . . attempts to delegate the responsibility of bringing detainees to court for a first appearance and ignores the jail's authority for long-term confinement, the policy is deliberately indifferent to detainees' due process rights." *Hayes*, 388 F.3d at 674.

In this case, Major Denzer testified that until the *Hayes* case was decided in 2004 he was unaware of the necessity of a separate Rule 8.1 hearing and the "policy" was that the "probable cause" determination was sufficient until the arraignment. I believe Scott has established that the County's "policy," or its failure to adopt adequate safeguards, provide training, or supervision, was the product of deliberate indifference to the constitutional rights of detainees. No internal safeguards were put in place, no procedures were developed to ensure the first appearances in fact occurred, no follow-up was done, and no steps were taken to ensure that the detention center in fact had the authority to continue to detain the arrested individuals. The inadequacy of this policy is both obvious and likely to result in the deprivation of constitutional



AO72A
(Rev. 8/82)

rights. *See e.g., Armstrong v. Squadrito*, 152 F.3d 564, 578-79 (7th Cir. 1998)("A policy that ignores whether the jail has authority for long-term confinement seems to be a policy of deliberate indifference. Furthermore, jailers hold not only the keys to the jail cell, but also the knowledge of who sits in the jail and how long they have sat there. They are the ones directly depriving detainees of liberty.").

Denzer is in charge of the day to day operations of the jail. The sheriff has delegated this responsibility to him. When a change in the policy was initiated, Denzer was intimately involved in both initiating the change and in implementation of the change.

The *Hayes* case did not declare new constitutional law or Arkansas procedural law. The Arkansas Rules of Criminal Procedure were adopted by per curiam order of the Arkansas Supreme Court in 1975 and became effective on January 1, 1976. *State v. Lester,* 343 Ark. 662, 38 S.W.2d 313 (2001). The Arkansas Supreme Court long before the *Hayes* decision came down ruled that the first appearance is mandatory and emphasized the importance of first appearance in the protection the accused's constitutional rights. *See e.g., Britt v. State*, 334 Ark. 142, 974 S.W. 2d 436 (1998)("The communications required by Rule 8.3 go beyond a mere probable-cause determination, and guarantee that the accused's constitutional rights will be protected and implemented."); *Bolden v. States*, 262 Ark. 718, 561 S.W.2d 281 (1978)(prompt-appearance requirement of Rule 8.1 is mandatory). The Arkansas Supreme Court also held prior to the *Hayes* decision that various periods of delay including, the thirty day period being utilized in Washington County, between arrest and first appearance ignored the specific requirements of Rule 8.1 and constituted a violation of the accused's rights. *See e.g., Duncan v. State*, 291 Ark. 521, 726 S.W.2d 653 (1987)(three and one half days of delay prior to first appearance

unreasonable where prosecutor made a deliberate decision to hold Duncan in detention and ignore the prompt appearance requirement–suppression of custodial statement was the remedy); *Cook v. State*, 274 Ark. 244, 623 S.W.2d 820 (1981)(thirty day delay sufficient to establish a violation; remedy was suppression of the custodial statement).

The "third and final step in this substantive due process analysis is determining whether, in the totality of the circumstances, the defendants conduct in depriving the [Plaintiff] of a constitutional right shocks the conscience. This is a question of law." *Hayes*, 388 F.3d at 675 (citations omitted).

In this regard, the Court stated:

> In the totality of circumstances in this case, the key is Arkansas Rule of Criminal Procedure 8.1, entitled "Prompt first appearance." The Rule requires: "An arrested person who is not released by citation or by other lawful manner shall be taken before a judicial officer without unnecessary delay." Ark. R. Crim. P. 8.1. Rule 8.1 is mandatory. *Bolden v. State,* 262 Ark. 718, 561 S.W.2d 281, 284 (1978). Detentions of less than 38 days violate Rule 8.1. *Duncan v. State,* 291 Ark. 521, 726 S.W.2d 653, 656 (1987)(3 ½ days); *Cook v. State,* 274 Ark. 244, 623 S.W.2d 820, 821 (1981) (31 days); *cf. Richardson v. State,* 283 Ark. 82, 671 S.W.2d 164 (1984) (56 days). Rule 8.1 is designed to protect "basic and fundamental rights which our state and *federal constitutions* secure to every arrestee." *Bolden,* 561 S.W.2d at 284 (emphasis added).

*Hayes*, 388 F.3d at 675. The Court concluded that "[t]he County's and Kelley's failure to take Hayes before a judge for 38 days [for a first appearance] shocks the conscience." *See also Armstrong*, 152 F.3d at 581-82 (57 days); *Coleman v. Frantz*, 754 F.2d 719, 723-24 (7th Cir. 1985)(eighteen days). *But see Luckes v. County of Hennepin*, 415 F.3d 936, 939 (8th Cir. 2005)(twenty-four hours "while unfortunate and understandably upsetting–does not shock the conscience.").



AO72A
(Rev. 8/82)

Following his initial arrest, Scott was detained for seventeen days without appearing before a judge until he was able to bond out on April 24th. Following his second arrest, he was held for thirty-one days without being appointed an attorney, advised of his rights, or being afforded an opportunity to appear before a judge. The protections and rights afforded him by the United States Constitution and Arkansas Rule of Criminal Procedure 8.1 were denied him. I conclude that defendant's failure to take Scott before the judge for seventeen days following the first arrest and thirty-one days following the second arrest shocks the conscience.

The final issue I must determine is what relief Scott is entitled to as a result of this constitutional deprivation. Defendant was previously granted summary judgment on Scott's claim for actual and punitive damages (Doc. 24). This left the possibility of an award of nominal damages.

In cases where it was found an inmate's constitutional rights were violated by improper confinement to administrative segregation or solitary confinement, the courts have found it appropriate to rely on a per day amount in assessing damages. *See e.g., Stevens v. McHan*, 3 F.3d 1204, 1207 (8th Cir. 1993). I find these cases instructive and I believe it is appropriate to award Scott nominal damages on a per day basis. Accordingly, I will award Scott nominal damages in the amount of $1 per day for each day he was detained without being afforded his first appearance. I will also order defendant to pay the filing fee of $350 that has been assessed against Scott pursuant to the terms of the Prison Litigation Reform Act.



AO72A
(Rev. 8/82)

**Conclusion**

For the reasons stated, plaintiff will be granted judgment against defendant. A separate judgment in accordance with this opinion will be entered.

DATED this 28th day of July 2008.

/s/ *J. Marschewski*

HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE



AO72A
(Rev. 8/82)